ELECTRONICALLY FILED
DATE FILED: 3-28-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LIBERTY MUTUAL INSURANCE COMPANY,
Plaintiff,

- against -

ZURICH AMERICAN INSURANCE COMPANY,
Defendant.
-------------------------------------------------------------X

11 Civ. 9357 (ALC)(KNF)

ORDER AND OPINION

**ANDREW L. CARTER, JR., United States District Judge:**

After the settlement of a personal injury action, two insurance companies dispute who should foot the bill. Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") seeks declaratory judgment that Defendant Zurich American Insurance Company ("Zurich American") is primarily responsible for insurance coverage in this matter as well as summary judgment for reimbursement of the $1 million it contributed to a settlement, arguing that the loss is covered under separate policies issued by Zurich American. Zurich American, separately seeks summary judgment that neither policy requires coverage to the additional insured. For the reasons set forth below, Liberty Mutual's motion (Dkt. No. 24) is granted and Zurich American's motion (Dkt. No. 30) is denied.

BACKGROUND

I. Underlying Action and Settlement

The present action arises out of an accident that occurred on March 11, 2008, that resulted in a lawsuit commenced by Louis DiMauro ("DiMauro") and Renee DiMauro entitled Louis DiMauro v. DOLP 205 Properties 11, Durst Organization. Inc., and Royal Realty Corp., Index No. 111748-08, in the Supreme Court of the State of New York, County of New York (the "Underlying Action"). The Underlying Action was filed against DOLP 205 Properties 11

("DOLP"), the Durst Organization, Inc. ("Durst"), and Royal Realty Corp. ("Royal Realty") (collectively, the "Durst Entities"). In the Underlying Action, DiMauro alleges that he was injured on March 11, 2008 while working at premises located at 205 East 42nd Street, New York, NY, which were owned and/or managed by one or more of the Durst Entities. At the time of DiMauro's injury, he was employed as an elevator mechanic by Schindler Elevator Corporation ("Schindler") and was at the Premises to fix a compensation switch. (Def. Rule 56.1 Stmt. ¶ 4).

DiMauro was injured during the opened the door to the elevator pit, turned to face a steel ladder affixed to the wall in order to descend to the pit's floor and placed his hands and feet on the ladder. As he was lowering himself into the pit, the right-hand side of the ladder pulled out and away from the wall, causing all of DiMauro's weight to shift to his left hand, allegedly causing injuries to DiMauro's left hand, arm and shoulder. (Def. Rule 56.1 Stmt. ¶ 6). In the Underlying Action, DiMauro alleged claims for negligence, three New York labor law claims (under sections 200, NYLL 240, 241(6)) and on behalf of DiMauro's wife, loss of consortium.

The Durst Entities were named insured and additional named insureds under a commercial general liability policy with Liberty Mutual, with a policy period from October 26, 2007 to October 26, 2008 (the "Liberty Mutual Policy"). (Pl's Rule 56.1 Stmt. ¶¶ 58-59). The Liberty Mutual Policy is an excess insurance policy that provides insurance in "excess over. . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement." (Id. ¶ 60). Liberty Mutual contributed $1 million to the settlement of the Underlying Action pursuant to the Liberty Mutual Policy. Liberty Mutual now seeks reimbursement in light of primary insurance coverage under

separate Zurich American insurance policies, one issued to the Durst Entities and one issued to Schindler.

II. The Zurich American Policies

A. Owners and Contractors Protective Liability (Zurich American - Durst Entities)

Royal Realty, one of the Durst Entities, maintained a policy with Zurich American. Specifically, Zurich American issued Owners and Contractors Protective Liability coverage for the policy period January 1, 2008 to January 1, 2009 ("Zurich American OCPL Policy"). (See DeMarco Aff. Ex. N, Zurich American OCPL Policy). The designated contractor on policy is Schindler. (Id. at Bates No. LM601; Def. Rule 56.1 Stmt. ¶ 29).

As relevant here, the OCPL Policy provides for "bodily injury" "only if

(1) The "bodily injury" . . . is caused by an "occurrence" and arises out of:
(a) Operations performed for you by the "contractor" at the location specified in the Declarations; or
(b) Your acts or omissions in connection with the general supervision of such operations; and
(2) The "bodily injury" . . . occurs during the policy period.

(See Shyer Aff. Ex. "16"; DeMarco Aff. Ex. N; Pl's Rule 56.1 Stmt. ¶ 51.)

The Zurich American OCPL Policy excludes coverage, however, on certain bases. In relevant part: "This insurance does not apply to. . . 'Bodily injury' or 'property damage' arising out of your, or your 'employees',' acts or omissions other than general supervision of 'work' performed for you by the 'contractor.'" (DeMarco Aff. Ex. N at Bates No. LM608). "Work" "includes materials, parts or equipment furnished in connection with the operations." (Id. at LM614). Zurich American contends that the OCPL Policy does not apply because DiMauro was not injured in the course of the Durst Entities' general supervision of Schindler's work.

B. Commercial General Liability (Zurich American – Schindler)

Zurich American also issued a commercial general liability policy to Schindler as Named Insured, with a policy period from January 1, 2008 to January 1, 2009 ("Zurich American CGL Policy"). Pursuant to a contract with the Durst Entities for the provision of elevator maintenance services (the "Contract") (DeMarco Aff. Ex. C), Schindler was required to maintain such insurance with bodily injury and property damage combined single limit of not less than $5,000,000 per occurrence at its sole cost and name the Durst Entities as an additional insured parties[1] on the policy. (See Pl's Rule 56.1 Stmt. ¶ 43-45; Shyer Aff. Ex. 15).

Under the Zurich American CGL Policy, coverage is extended to additional insured by two separate endorsements. Under the first endorsement, coverage for additional insured parties is provided only to "those persons or organizations where required by written contract" and "shown in the Schedule, but only with respect to liability for "bodily injury". . . caused, in whole or in part, by:

1. Your [i.e., Schindler's] acts or omissions; or
2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above."

(Def. Rule 56.1 Stmt. ¶ 28; DeMarco Aff. Ex. M at Bates No. Z0063).

Another endorsement similarly provides coverage to additional insured parties "but only with respect to liability for "bodily injury". . . caused, in whole or in part, by [the named insured, Schindler's] acts or omissions or the acts or omissions of those acting on [Schindler] behalf. . . In the performance of [Schindler's] ongoing operations. . ."

(Def. Rule 56.1 Stmt. ¶ 28; DeMarco Aff. Ex. M at Bates No. Z0067.)

---

[1] An additional insured is a person or organization listed in the Schedule. Under the Schedule, "only those persons or organizations where required by written contract" were counted as additional insured parties. (See DeMarco Aff. Ex. M at Z0063).

According to Zurich American, there is no coverage under CGL Policy because Schindler was not negligent nor did it commit an act or omission that caused DiMauro's injuries. Rather, it was the Durst Entities' negligence or omission and under the additional insured provision of the CGL Policy, only the act or omission of the named insured resulting in the injury would be covered.

Both the OCPL Policy and CGL Policy include "other insurance" provisions that the insurance would be primary insurance, provided other conditions do not apply. (Pl's Rule 56.1 Stmt. ¶ 52, 56). Those conditions are not applicable here. There is also no dispute that the injury occurred during the policy period for both Zurich American policies.

DISCUSSION

I. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd., 696 F. Supp. 897, 900 (S.D.N.Y. 1988).

The burden lies with the moving party to demonstrate the absence of any genuine issue of material fact and all inferences and ambiguities are to be resolved in favor of the nonmoving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002). If

"no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).

II. Coverage Under The Zurich American OCPL Policy

The Court grants summary judgment to Liberty Mutual for coverage under the OCPL Policy. Under the OCPL Policy, coverage is available for bodily injury that arises out of operations performed by Schindler at the Premises. There is no question that DiMauro was injured while working at the Premises as a Schindler employee. Under New York law interpreting insurance policies, "arising out of" has an expansive meaning and focuses "not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained." Regal Constr. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA, 15 N.Y.3d 34, 38 (N.Y. 2010) (citing Maroney v. New York Cent. Mut. Fire Ins. Co., 5 N.Y.3d 467, 472 (N.Y. 2005)). However, pursuant to an exclusion, there is no coverage unless the bodily injury occurs under the general supervision of Schindler's work. There is no dispute that DiMauro was injured in his capacity as a Schindler employee while performing operations for the Durst Entities. So unless the exclusion to coverage applies, DiMauro's injury is covered under the Policy.[2]

[2] The Court does not find that Zurich American breached its duty to defend and thus is precluded from arguing for the exclusion. In particular, Zurich American reimbursed or began reimbursing defense costs to Liberty Mutual (see Shyer Aff. Exs. 5 & 6) and although Zurich American did not respond to the tender of insurance for coverage under the Zurich American CGL Policy until almost two years after the Underlying Action was filed, Schindler was not named as a defendant in that action so it was not readily apparent to Zurich American that Schindler would need defense.

Although on summary judgment the court must draw all inferences in favor of the non-moving party, the fact remains that the burden is on the insurer to establish that an exclusion under an insurance policy applies. Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co., 702 F.3d 118, 121 (2d Cir. 2012) (citing Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co., 98 N.Y.2d 208, 220, 746 N.Y.S.2d 622, 774 N.E.2d 687 (N.Y. 2002) ("Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage.").

Zurich American contends that the OCPL Policy does not apply because DiMauro was not injured in the course of the Durst Entities' general supervision of Schindler's work. Despite the centrality of the term to the application of the exclusion (where it is not disputed that the other conditions are met), "general supervision" unlike many words in the policy is not defined.

"The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract. Terms in an insurance contract must be given their plain and ordinary meaning." Ment Bros., 702 F.3d at 122 (internal citations and quotation marks omitted). Under New York law, "policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer." Belt Painting Corp. v. TIG Ins. Co.,100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 795 N.E.2d 15 (N.Y. 2003); Catucci v. Greenwich Ins. Co., 37 A.D.3d 513, 514, 830 N.Y.S.2d 281 (2d Dep't 2007) ("An exclusion from coverage must be specific and clear in order to be enforced, and an ambiguity in an exclusionary clause must be construed most strongly against the insurer.") (internal citations and quotation marks omitted).

Whether a provision in an insurance policy is ambiguous is a question of law for the court to determine. Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co. 61 A.D.3d 655, 656, 877

N.Y.S.2d 359, 361 (2d Dep't 2009) (citing NIACC, LLC v. Greenwich Ins. Co., 51 A.D.3d 883, 857 N.Y.S.2d 723 (2d Dep't 2008). "The test for ambiguity is whether the language in the insurance contract is susceptible to two reasonable interpretations." Id.

Here, the term "general supervision" is susceptible to (at least) two reasonable interpretations: (1) hands-off or (2) more involved, possibly even to the point of micro-management. On one hand, "general supervision" could be narrowly interpreted to only include visual inspection of Schindler's materials and finished product. On the other, "general supervision" could also include direction as to how the task should be accomplished.

Simply put, Zurich American has not met its burden to establish that general supervision only has one, narrow meaning so that the DiMauro's injury necessarily arose out of an act or omission by the Durst Entities "other than general supervision of 'work' performed for you by the 'contractor'." Morse Diesel Intern. v. Olympic Plumbing & Heating Corp., 299 A.D.2d 276, 277, 750 N.Y.S.2d 72, 74 (1st Dep't 2002) ("As regards the supervision exclusion, [defendant insurer] has failed to meet its heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.") (internal citations and quotation marks omitted). Because the Court has not been made privy to the nature of "general supervision" at the Durst Entities, the term is ambiguous and should be construed against the insurer. As DiMauro's injury falls squarely within the coverage provided under the OCPL Policy and Zurich American has failed to establish any exclusion to coverage, the Court grants summary judgment to Liberty Mutual and denies Zurich American's motion concerning the OCPL Policy.

III. Coverage Under The Zurich American CGL Policy

The Court also grants summary judgment to Liberty Mutual for coverage under the Zurich American CPL Policy. Courts in the First Department have repeatedly concluded, albeit in the absence of significant legal analysis, that the phrase "caused by" "does not materially differ from the . . . phrase 'arising out of.'" W & W Glass Sys., Inc. v Admiral Ins. Co., 91 AD3d 530, 530 (1st Dep't 2012); National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co., 103 A.D.3d 473, 474 (1st Dep't 2013) ("National Union"); Strauss Painting, Inc. v. Mt. Hawley Ins. Co., 105 A.D.3d 512, 513-514 (1st Dep't 2013); see also Regal, 15 N.Y.3d at 38 ("arising out of" requires "only that there be some causal relationship between the injury and the risk for which coverage is provided").

Here, DiMauro ostensibly was injured when the ladder he was descending became partially unbolted from the wall. He was descending the ladder in the course of his work on Schindler's behalf for the Durst Entities to repair a compensation switch. The parties do not dispute that the underlying personal injury action arose out of an accident that occurred while DiMauro was acting on behalf of Schindler in the performance of its ongoing operations for the Durst Entities pursuant to the National Contract. Therefore, the condition required for coverage under the additional insured endorsement is met, and Zurich American is liable for coverage thereunder.

It is not necessary to determine that Schindler was somehow negligent as any act or omission by Schindler or someone acting on its behalf will suffice if it was "in the performance of [Schindler's] ongoing operations for the additional insured. . ." See Strauss Painting, 105 A.D.3d at 513 ("additional insured endorsement speaks in terms of "acts or omissions," not negligence"); Admiral Ins. Co. v. American Empire Surplus Lines Ins. Co., 96 A.D.3d 585, 588-

589 n.5, 947 N.Y.S.2d 442, 446 (1st Dep't 2012) ("Given that the liability at issue thus arises from the named insured's . . . operations on behalf of the additional insured. . ., it is immaterial both that there was apparently no fault on the part of the former and that there was (as determined in the underlying action) fault on the part of the latter.").

Zurich American urges the Court to disregard the rulings in National Union and Strauss, contending that "in the absence of a ruling by the Court of Appeals, a federal district court is not bound by the opinions issued by New York State's lower courts." (Zurich American Mem. in Support of Motion for Summary Judgment at 12 (quoting Williams v. J.P. Morgan & Co., 199 F. Supp. 2d 189, 191 (S.D.N.Y. 2002)). This is only half-true. Where the New York Court of Appeals has not ruled on an issue, federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." Rodland v. Judlau Contracting, Inc., 844 F.Supp.2d 359, 363 (S.D.N.Y. 2012) (quoting V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010))

Zurich American has provided no cases that suggest that the Court of Appeals would necessarily disapprove of the First Department's interpretation and has not even cited conflicting case law from other state appellate courts.[3] Instead, it only provides New York trial court cases all pre-dating the decisions in National Union and Strauss Painting. For instance, Zurich American relies on a CNY Builders, CNY Builders, LLC v. Fireman's Fund Ins. Co., 2012 NY Slip Op 32835(U) (N.Y. Sup. Ct. Nov. 26, 2012), which in turn relies on older cases to support the contention that "acts or omissions" is interchangeable with "negligence." Id. (citing Am. Guar. and Liab. Ins. Co. v CNA Reins. Co., 16 A.D.3d 154, 155-56, 791 N.Y.S.2d 525 (1st

[3] It is especially ironic that Zurich American cites Crespo, another (and older) First Department decision, in support of its argument that there must be a finding of negligence.

Dep't 2005); Crespo v City of New York, 303 A.D.2d 166, 167, 756 N.Y.S.2d 183 (1st Dep't 2003)).

Although it did not explicitly reject the reasoning of Crespo, Strauss Painting *specifically* reversed the trial court's holding that the same additional insured clause at issue here required a showing of the named insured's negligence:

> The wording of the court's declaration that the Met is entitled to defense and indemnity in the underlying action must be altered, however, to exclude the necessity of a finding of negligence by plaintiff in the underlying action. The additional insured endorsement speaks in terms of "acts or omissions," not negligence. Thus, in the unlikely event that it would be found that some nonnegligent act by plaintiff caused the accident, the Met would still be entitled to coverage under the additional insured endorsement.

Strauss Painting, 105 A.D.3d at 513 (internal citations omitted).

The Court also notes that there is no bright-letter rule that "caused by" necessarily implies proximate cause especially when modified by the clause, "in whole or in part." Strauss Painting and National Union, faced a "caused, in whole or in part, by" clause (as present in the Zurich American CGL Policy) and found that coverage extended to the additional insured. There is simply no indication that the First Department was somehow unaware of its interpretation. Indeed, the court even acknowledged that "caused by" is "language arguably narrower than the "arising out of" language," but that language, too, "covered a loss involving an employee of ... the named insured, who was injured while performing the named insured's work under the subcontract." Admiral, 96 A.D.3d at 588, 947 N.Y.S.2d at 446 (first alteration omitted).

Thus, an interpretation of the Zurich American CGL Policy that would require coverage of a property owner for its own negligence is not, on its face, contrary to New York statutes. In the absence of clear guidance that the Court of Appeals would reach a different conclusion, the

Court adopts the First Department's interpretation and concludes that the Durst Entities should have been deemed as an additional insured under the Zurich American CGL policy. Therefore, summary judgment is granted to Liberty Mutual for the CGL Policy.

For the same reasons, summary judgment is denied to Zurich American. Furthermore, although not dispositive in light of the lack of necessity for a fault determination by the named insured, Zurich American's motion also fails because there is an issue of material fact whether DiMauro acted, even in the smallest way, to "cause[], in. . . part" his injury. (See Shyer Reply Aff. Ex. 2, April 17, 2012 claims note by Todd Hanson ("The accident arose out of Schindlers [sic] work, potentially out of an act or omission, depending upon how broadly coverage is interpreted.").

IV. Declaration of Primary Insurance

Zurich American does not challenge the fact that the Zurich American OCPL and CGL Policies provides primary insurance where an insured is covered by the policy. Having found that the Durst Entities should have been deemed additional insureds under the Zurich American CGL Policy, the Court grants Liberty Mutual's motion for declaratory judgment that coverage under the Zurich American OCPL and CGL Policies must be exhausted before the "excess" insurance of the Liberty Mutual CGL policy is reached. Pursuant to the Zurich American Policies, Zurich American must reimburse the amount Liberty Mutual contributed to the settlement, up to the policy amount and in the order of priority between those two policies.

CONCLUSION

For the reasons stated herein, summary judgment is GRANTED to Plaintiff Liberty Mutual (Dkt. No. 24) and DENIED to Defendant Zurich American (Dkt. No. 30). It is further declared that the Zurich American OCPL and CGL Policies are primary insurance, as compared

to the Liberty Mutual Policy. The Clerk is respectfully directed to close these motions and this case.

SO ORDERED.

Dated: March 28, 2014
New York, New York

3-28-14

**ANDREW L. CARTER, JR.**
United States District Judge